This suit is for the cost of re-locating a water main on the west section of Eager Street bridge, in the City of Baltimore, over the tracks of the Pennsylvania Railroad Company. *Page 78 
In the construction of the Fallsway over Jones Falls valley north of Eager Street, there were required, to support the viaduct, piers and arches, the proper placing of which was prevented by the location of the tracks of the railroad company on its property in said valley, so that it became necessary for Mr. Hendrick, the chief engineer of the city, having charge of the construction of the Fallsway, to confer with Mr. Gamble Latrobe, an engineer, and at that time general agent and superintendent of the company, in reference to some plan for relocating said tracks, so as to make room for the piers. On its part, the railroad company desired greater overhead clearance for its trains, which involved a change of grade on Eager Street.
The contract between the parties, growing out of these conferences, is contained in the letter of Mr. Latrobe of October 11th, 1912, to Mr. Hendrick, and the letter of Mr. Hendrick in reply, dated October 14th, 1912, the two letters being as follows:
 "Dear Sir:
 "Referring to my letter of October 5th and previous correspondence, and to a letter from the Mayor dated October 8th (which I received on my return to my office this morning), relative to the crossing of the Jones' Falls viaduct over our tracks:
 "I am very sorry to know that we seem to have been causing you some inconvenience, but it would be useless for us to give you a letter of introduction to our engineering department in Philadelphia, as they are not acquainted with this situation and have virtually nothing to do with it, this being a division matter which is in the hands of myself and the general superintendent at Williamsport, Pa.
 "We feel that the plan we finally agreed upon should be followed — that is, that the piers should be so arranged as to make provision for our future development without incidental expense to us, and that the head room of which we spoke should be given us. This would entail the elevation of Eager Street and *Page 79 
would make necessary certain track changes incidental to the building of the new piers. As I have already told you, we are perfectly willing to assume the expense of the track changes, and we will also assume the cost of elevating Eager Street bridge to the proper height over our tracks. As you are aware, we own and maintain this bridge. The city should assume the cost of the change of grade from the west end of the bridge as far out Eager Street as they consider it necessary to change it. The bridge on the east side of the Fallsway would have to be elevated if the grade is changed, as we see it, and, as stated, while we will stand for the expense of raising the bridge itself, all changes in grade to the outside of the bridges referred to should be borne by the city. This arrangement appears to be perfectly fair, and I should be glad to receive advice from you as to whether it will be satisfactory from the city's standpoint. I shall also appreciate it if you will let us know at once how soon it will be necessary to begin this bridge work and what the actual grades will be as related to the existing street grades, so that we can work up our plans and estimates accordingly. Will you kindly send us also a profile of Eager Street showing the existing and proposed grades, and oblige,
 "Yours respectfully, "G. Latrobe, "Genl. Agt. Supt."
 "Sewerage Commission of the City of Baltimore, "Chief Engineer's Office, "Baltimore, October 14, 1912.
 "Mr. Gamble Latrobe, Gen. Agt. Supt., "Northern Central Railway Co., "City.
 "Dear Sir:
 "I am in receipt of your letter of October 11th, with reference to our previous correspondence, and various conferences with you and your engineers, regarding *Page 80 
the crossing of the Jones' Falls viaduct over your tracks, between Eager and Chase Streets, and note that your company will agree to assume the expense of all track changes incidental to constructing the viaduct and any future changes you might care to make on Eager Street bridge, provided that the city will so arrange their piers as to make provision for the future development of your company (as per plans dated September 11th, a blue print of which you secured during our recent conference in my office), giving you a twenty-foot overhead clearance, the height requested during this conference, and, further, that we would bear the expense of raising the grade of Eager Street 2.3 feet at this intersection with the viaduct, as per the yellow lines shown on the blue prints submitted to us with your letter of July 18th.
 "The above blue prints and correspondence were duly submitted to his Honor the Mayor and the Board of Estimates, resulting in their agreeing to adjust our viaduct along the above lines, and assuming the cost of raising the grade of Eager Street, as per the yellow lines on the blue prints submitted, your company to assume all other costs involved in your track and bridge changes.
 "As we have gotten together on this matter, I should think it would be necessary to have the proper papers drawn up and signed by both your company and the city. If agreeable, I will have the City Solicitor prepare them at once.
 "Yours truly, "Calvin W. Hendrick, "Chief Engineer.
 "P.S. — In order to expedite matters, I am sending this by special messenger.
 "C.W.H."
The following letter from Mr. Latrobe to Mr. Hendrick, dated October 15th, 1912, is in answer to the suggestion contained *Page 81 
in Mr. Hendrick's letter that it would be well to have a more formal contract:
 "The Pennsylvania Railroad Company, "Baltimore, Md., October 15, 1912.
 "Mr. Calvin W. Hendrick, "Chief Engineer, Sewerage Commission. "American Building, Baltimore.
 "Dear Sir:
 "Referring to your favor of October 14th relative to the crossing of the Jones' Falls viaduct over our tracks, between Eager and Chase Streets, at Baltimore:
 "I cannot see that anything should be necessary further than my letter of October 11th to you and your reply of October 14th accepting our terms covering the work. I know that my statements will stand, and I have no reason to doubt that yours will, and no doubt that will suffice. The bridges are ours to maintain and I can see no reason for preparing a more formal agreement.
 "Will you be kind enough to let me have the information and profile asked for in my letter of October 11th as promptly as possible, and oblige,
 "Yours respectfully,
 "G. Latrobe, "Genl. Agt. Supt."
The plan agreed upon necessitated the crossing of Eager Street by the Fallsway between the east and west bridges of the company at a grade 2.3 feet higher than the former grade at that point, and the raising of the floors of the east and west bridges to meet the surface of the Fallsway at said grade.
It may be well here to refer to the history of said bridges and of the water main attached thereto by the city prior to the construction of the Fallsway; and this is taken from the brief of appellant, its correctness not having been questioned by appellee: *Page 82 
 "Prior to September 26, 1868, the railroad of the Northern Central Railway Company, from Union Station and north of it on North Charles Street to Calvert Station, its southern terminus in Baltimore City, consisting then of two or more tracks, was constructed on the east side of Jones' Falls in Jones' Falls Valley, and crossed Eager Street, which runs east and west across the valley, at grade, as well as Charles Street, running north and south.
 "Such was the condition of things at Eager Street when Ordinance No. 77, approved September 26, 1868, was passed by the Mayor and City Council of Baltimore, which ordinance, after reciting that it was desirable that railroads should cross streets below the grade thereof, and that the owners of a majority of the front feet of ground on Charles and Eager Streets have petitioned the Mayor and City Council of Baltimore asking that the grades of said streets be changed to accomplish the above object as respected the Northern Central Railway, it was ordained by the first section of said ordinance as follows:
 "`Section 1. Be it enacted and ordained by the Mayor and City Council of Baltimore, That the grade of Charles Street between Hoffman and Lanvale Streets and the grade of Eager Street between North and Buren Streets be raised and changed under the direction of the Mayor and City Commissioner so as to enable the Northern Central Railway Company to construct its railway tracks under said streets; and all open cuts along Hoffman and other streets shall be tunnelled by the said Railway Company.
 "`Section 2. That all expenses incurred in making said changes of grade, including the tunnelling and repaving of all paved streets, shall be paid by the Northern Central Railway Company.'
 "Under the above ordinance a fill was made across Jones' Falls Valley in the line of Eager Street from the west side of the valley to Jones' Falls; and a stone *Page 83 
arch was built over the falls, which flowed through about the centre of the valley, and the earth fill carried over this arch to the east side of the falls, where a bridge abutment was constructed; and another abutment was constructed on the east side of Jones' Falls Valley, and then an iron bridge with a wooden floor constructed across and between these two abutments spanning the tracks of the Northern Central Railway Company below. Thus Eager Street was upon an earth fill or embankment from the west side of the valley to the east side of Jones' Falls, and from the east side of Jones' Falls to the east side of the valley it was on the iron bridge with the wooden floor.
 "In the early part of 1884, the Northern Central Railway Company, desiring more tracks on its road between Union Station and Calvert Station than the space on the east side of the falls permitted at Eager Street, applied for and obtained an ordinance from the Mayor and City Council of Baltimore, Ordinance No. 88, approved May 24, 1884, authorizing it to lay additional tracks under Eager Street on the west side of the falls by cutting away the embankment aforesaid between the west side of the valley and the west side of the falls, and substituting therefor a bridge to carry Eager Street from the west side of the valley, where a bridge abutment was built, to the west side of the falls, where another bridge abutment was built, the bridge being on the then grade of Eager Street, and, after giving the above authority, said ordinance provides: `and the said company (the N.C. Ry. Co.) shall, as a condition of the privileges hereby given to it, always maintain and keep in good repair the bridge which it is hereby authorized to construct.'
 "This ordinance also fixed the grade of Eager Street from North Street (now Guilford Avenue) to the bridge on the east side of the falls, the regrading and paving and all other expense in connection with the work to be paid by the Northern Central Railway Company. *Page 84 
 "When this bridge was completed in 1884 Eager Street was carried by it from the west side of the valley to the abutment on the west side of the falls, and then by a fill or embankment over the arch over the falls to the west abutment of the east bridge over the Northern Central Railway, and thence by this bridge to the east side of the falls.
 "Thereafter, the city constructed its water main in Eager Street, and when the pipe came to the east abutment of the east bridge, which was built under the Ordinance of 1868, it rose to the surface and made an arch over the east bridge, dividing it into a north and south driveway, and then entered the ground again and ran under the surface of the fill between the said east and west bridges; and then when it came to the east abutment of the west bridge constructed under the Ordinance of 1884, it came to the surface again; but, instead of making an arch across the west bridge as it had done with respect to the east bridge, it ran across the bridge partly below and partly above the floor, dividing it also into a north and south driveway, and rested on iron straps which were made fast to two beams in the centre of the bridge, running east and west, the under surface of the pipe being below the upper surface of the beams; and then over the pipe running east and west over the centre of the bridge was a wooden boxing extending above the surface of the floor 18 inches, completely covering the pipe; and after the pipe crossed the west abutment of the west bridge it made a right angle bend and went under the surface of the street again.
 "The main tracks of the Northern Central Railway Company passing under the west bridge at Eager Street, which was built in 1884, continued on the west side of the falls to a point north of Eager Street between Eager Street and Chase Street, the next street north running east and west, and then crossed the falls on a bridge to the east side of the falls, and thence went north to Union Station, and has other numerous tracks in the valley on both sides of Jones' Falls. *Page 85 
 "Such was the situation at Eager Street and north of it when, about the year 1912, the city was planning the construction of the Fallsway viaduct up Jones' Falls Valley running north and south, which would cross all the streets running east and west across the valley, including Eager Street."
Coming now to the proceedings of the company subsequent to the agreement between it and the city, as contained in the letters above referred to, it appears that, before beginning the work of raising the floor of the east bridge to meet the grade of the Fallsway, the company concluded that it needed more room for tracks between the east abutment and the west abutment of the east bridge, and obtained the consent of the city to set the east abutment of said bridge back eastwardly eighteen feet, and to build a new concrete bridge between the east and west abutments. This bridge was constructed at the expense of the company. And inasmuch as this was a new structure and it became necessary, therefore, that the work of attaching the city's water main to this structure, by reason of the removal of the old bridge at the company's request and for its convenience, the company agreed, on the advice of its counsel, to pay, and did pay, the cost of carrying the pipe across this bridge, amounting to $4,392.01. It also agreed to build the concrete tunnel through the abutments and under the railroad between the abutments for the water pipe. But as to the cost of relocating the water main on the west bridge, the company insisted it was under no obligation, either by the terms of the contract or by reason of any purpose or convenience of the company served by the change of location, or by reason of any necessity for such change growing out of the raising of the floor of the bridge to meet the new grade. With this conclusion we entirely agree.
It is to be observed that, when the bridge was originally built, the water main was attached thereto by the city for its own convenience, and according to its own plans. It ran across the bridge partly below and partly above the floor, dividing *Page 86 
it into a north and south driveway and rested on iron straps which were made fast to two beams in the centre of the bridge running east and west, the under surface of the pipe being below the upper surface of the beams. Over the pipe was a wooden boxing extending above the surface of the floor eighteen inches.
The correspondence in regard to the location of the pipe in relation to the change of the floor of the bridge shows beyond any reasonable doubt that the floor of the bridge was raised, at the request of the city engineer and at the expense of the company, much higher than the change of street grade required, solely for the purpose of covering the pipe as it was then located. In a letter from Mr. Latrobe to Mr. Boteler, acting City Engineer, Mr. Latrobe said:
 "In accordance with your letter of August 15, 1914, I enclose a blue print showing the proposed alterations to Eager Street bridge on the west side of Jones' Falls, Baltimore. You will see that it was not our intention to make any changes whatever in the cast-iron water pipe over the bridge on the west side of Jones' Falls, our thought being to merely strengthen the bridge and raise up the floor in accordance with the plan herewith sent you. In case it is decided by the Water Department to make any change in the elevation of the water pipe over the bridge on the west side of Jones' Falls, we do not think the railroad company should bear any portion of this expense, as no change is necessary until such time as a new bridge on new lines is installed, when it will be necessary for us to make an absolute change in the location of the water pipe over the bridge on the west side of the falls, and this change cannot be made until the new layout of the tracks, etc., in connection with the new Calvert yard is definitely decided on and undertaken."
In his reply to this letter Mr. Boteler says that he will refer the blueprint to the water department, and advise promptly of their intentions as to their pipe location if they *Page 87 
propose to change same. He makes no objection however to the claim of Latrobe to exemption from any expense connected with the moving of the pipe, should the city decide to change its location. The omission is significant, because, throughout the correspondence, except in this instance, whenever the company suggested that it should not be held for expenses for which it did not think it was responsible, there was always a prompt insistence by the city engineer that the company was liable. It is also significant that nowhere in the correspondence does it appear that the company was ever notified of an intention on the part of the city to change the location of this pipe. On the contrary, the following letters show that the city had no such intention.
 "September 16, 1914.
 "Mr. H.K. McKay, "City Engineer, Baltimore.
 "Dear Sir:
 "Replying to your letter of September 11th, and returning herewith the blue print, which you advised was only intended as a memorandum sketch showing the relation of the Water Department's pipe to the established grade, as requested by yourself:
 "In your letter of the above date you state, `Plotted thereon you will observe the water pipe in the location which the Water Department expects to place it.' My understanding is that the Water Department does not expect to make any change whatever in the present location or grade of its water pipe over the west span of Eager Street bridge on the west side of the Fallsway. Is not my understanding correct?
 "With reference to the floor on the bridge, I would advise you that we will conform with your request to place a 3-inch lumber floor on top of the Eager Street bridge on the west side of the Fallsway.
 "My further understanding is that the railroad company is to pay the entire cost of changing Eager Street bridge on the west side of the Fallsway to the west side of the bridge, but that it will have nothing *Page 88 
whatever to do with changing the roadway of Eager Street west of the west abutment of the bridge. Will you kindly advise me if this is clearly understood?
 "The elevations shown on our plan are based on P.R.R. datum and not city datum. In order to get city datum, add 1.35 to P.R.R. datum.
 "If you will have the floor elevation at each end of the Eager Street bridge west of Jones' Falls designated on the ground, we will keep to this elevation exactly.
 "Yours respectfully, "G. Latrobe, "Genl. Agt. Supt.
 "Copy to DBD and JCK "dm — Encl."
 "Department of Public Improvements, "Office of City Engineer, "Baltimore, Md., Sept. 21st, 1914.
 "Mr. Gamble Latrobe, Gen'l Agt. Supt., "Pennsylvania Railroad, "Baltimore, Md.
 "Dear Sir:
 "I have yours of September 16th returning your plan showing the change in the Eager Street bridge, west of the Fallsway, on which was sketched the location of the Water Department's pipe line and our established grade.
 "In placing this grade on the plan I assumed that your elevations were city datum. Your information in the letter that they referred to Pennsylvania Railroad datum puts a somewhat different phase on the situation at the west end of the bridge.
 "You have shown the floor at about its proper elevation, and this would indicate that unless the pipe line was depressed or your bridge slightly raised at this point the pipe must necessarily project above the surface of the floor. This would be evidently undesirable, since the additional elevation is so slight to place it entirely below the floor. *Page 89 
 "I desire to request that you raise your bridge at the west abutment when the changes are undertaken sufficiently to place the top of the bells of the pipe line below the underside of the flooring.
 "Your understanding that the Water Department does not contemplate any change in the location of their pipe line is correct.
 "As requested in the last paragraph of your letter, we will have the elevation at each end of the bridge designated on the ground whenever you desire same; these elevations to be such as to acquire the above mentioned object.
 "Yours very truly, "H.K. McKay, "City Engineer."
 "Mr. H.K. McKay, "City Engineer.
 "Dear Sir:
 "In accordance with your letter of September 21st concerning the change in the Eager Street bridge west of the Fallsway, I am very glad to accede to your request that we raise our bridge at the west abutment when the changes are undertaken sufficiently to place the top of the bells of the pipe line below the underside of the flooring.
 "I further note that you will give us the elevation at each end of the bridge on the ground whenever we are ready to require this information, on account of the construction of our bridge, and would be glad if you would have these elevations given us on Monday morning, September 28, 1914. I will have one of our engineers at the bridge at 10 A.M. on that date so that he will be able to mark the elevations which you give us.
 "Thanking you for your courtesy in this matter, I am,
 "Yours very truly, "G. Latrobe, "General Agent Supt." *Page 90 
When Mr. Latrobe was informed of the amount of the city's bill against the company, several letters were exchanged, as follows:
 "January 12, 1915.
"Mr. R.L. Clemmitt, "Acting Water Engineer, "Baltimore, Md.
 "Dear Sir:
 "Referring to your conversation with our division engineer, Mr. Franklin Duane, on January 11th, in your office in regard to the cost of changing the pipe on the east side of Eager Street bridge, the cost of same as per bill rendered by the city being $6,718.00, whereas Mr. Ezra B. Whitman's letter to me of August 4, 1913, stated that he had estimated that the cost of this work would be approximately $3,500.00.
 "It is very unfortunate that this bill has been increased by almost 100 per cent., and it seems to me as though you must have included in your bill the recaulking and general repairs to your pipe, etc., which you had done on the west side of the new Fallsway. In view of the fact that the location of this water pipe on the west side of the Fallsway was in no way changed and recaulking of your pipe, etc., which you did was due to no fault of the railroad company, but due to general wear and tear, I shall be very glad if you will go carefully into the bill of $6,718.00 which you sent us, and see if some of this expense cannot be deducted.
 "Your prompt reply in regard to this matter is requested.
 "Yours respectfully,
 "G. Latrobe, "Genl. Agt. Supt." *Page 91 
 "City of Baltimore, "Water Department,
 "February 5th, 1915.
 "Mr. Gamble Latrobe, General Agent Supt., "Pennsylvania Railroad Company, "City.
 "Dear Sir:
 "In reply to your letter of January 12th in regard to the bill of $6,718.00 for work done at Eager Street bridge at the Fallsway, I beg to advise you that I have gone into this matter very carefully and desire to say that I find there have been three separate pieces of work done in Eager Street between Buren Street and Guilford Avenue.
 "First — The installing of two 30-inch valves in Eager Street, one near Guilford Avenue and the other near Buren Street.
 "Second — Some changes in our 30-inch main, made necessary by the change of grade in the bridge west of Fallsway; and
 Third — The drop in the 30-inch main under the new bridge east of the Fallsway.
 "I find that the entire expense of all of these changes has been charged to you in the bill of $6,718.00.
 "The estimate given you by Mr. Whitman of $3,500.00 was supposed to cover the expense of the work under the new bridge, and I am billing you for this piece of work separately at the exact cost of doing the work, which is $4,392.01, which is about 25 per cent. higher than the estimate which Mr. Whitman gave you. I am also billing you for the work done on the bridge west of the Fallsway, which amounted to $1,311.73, as by the opinion of the City Solicitor under date of April 1st, 1914, he advises me that all of this work should be charged to your company.
 "The cost of installing the two 30-inch valves will be borne by the Water Department, as I do not see any good reason why that work should be charged to your company. *Page 92 
 "I trust this statement of the matter will be satisfactory to you and regret that the same was delayed so long in this office.
 "Yours truly, "Robt. L. Clemmitt, "Acting Water Engineer."
 "Mr. Robert L. Clemmitt, "Acting Water Engineer, "Baltimore, Md.
 "Dear Sir:
 "Acknowledging receipt of your letter of February 5th, I would advise you that the bill covering the change in the thirty-inch main at Eager Street on the east side of the falls, amounting to $4,392.01, is satfactory, and we have passed the same for payment.
 "We have not, however, passed the bill for `relocating the thirty-inch water main on the bridge west of the Fallsway,' amounting to $1,311.73, as we believe the City Solicitor, in giving his opinion of April 1, 1914, that all of the work should be charged against the railroad company, was under a misapprehension of the facts in the case. It must be distinctly understood that no changes of any kind or description were required in your pipe line west of the Fallsway, due to any work of the railroad company. The pipe now rests in identically the same location, with the same supports, as it has always rested. We understand that you made changes in the bends of this pipe at the west end of the bridge and did other work in order to improve the appearance of the bridge and get the pipe under the new floor of this bridge, which floor the Pennsylvania Railroad Company raised at its expense at the request of the City Engineer, in order to cover over your pipe. We made no change of any kind or description in our bridge west of the Fallsway that could have possibly made the Water Department spend one dollar on their pipe had they not desired to make some change in it. If Mr. Field is still of the opinion, after having full knowledge of *Page 93 
this case, that the railroad company is responsible for the cost of this change, will you kindly have him advise on what grounds he bases his opinion. I am retaining the bill for the `relocation of the thirty-inch water main on the bridge west of the Fallsway viaduct' for our file until I hear further from you on the subject.
 "Yours respectfully, "G. Latrobe, "Genl. Agt. Supt."
 "City of Baltimore, "Water Department,
 "December 20, 1915.
 "Pennsylvania Railroad Co., "Union Station, City. "Attention of Mr. Gamble Latrobe.
 "Gentlemen:
 "We again enclose our account against you, under date of January 29, 1915, for relocating 30-inch water main, etc., amounting to $1,311.73.
 "If there is any reason why this should not be paid, please advise at once; if not, make prompt remittance covering same to the City Comptroller.
 "Yours very truly, "Chas W. Nagle, "Auditor,
 "For Walter E. Lee, "Water Engineer."
 "December 31, 1915.
 "Mr. Charles W. Nagle, Auditor, Water Engr's Dept., "Baltimore, Md.
 "Dear Sir:
 "In reply to your letter of December 20, 1915, I would advise you that your bill for relocating the 30-inch water main, etc., on Eager Street, amounting to $1,311.73, has not been paid for the reason that we do not think it is proper that this bill should be made *Page 94 
out against the railroad company. We have had this matter up many times with the Water Engineer's Department, and this morning my representative met Mr. S.S. Field on the ground and explained the matter to him. Mr. Field was very much surprised at what we told him, and stated that he would take the matter up again with your department, as he certainly had been told that this water pipe had been lowered in order to permit the railroad company to get a proper grade on Eager Street, while I am sure that you are well aware that the elevation of the water pipe has not been changed in the slightest degree from that which it has always been in, and that the railroad company raised the floor of its bridge over Eager Street, west of the Fallsway, in order to cover this pipe, which formerly projected above the roadway, this being done at the request of the City Engineer and at the expense of the railroad company.
 "Yours respectfully, "G. Latrobe, "Genl. Agt. Supt."
It will be seen from this correspondence that no one controverts Mr. Latrobe's assertions that no changes of any kind in the pipe line west of the Fallsway were required by any work of the railroad company, and the company "made no change of any kind or description in our bridge west of the Fallsway that could have possibly made the water department spend one dollar on their pipe had they not desired to make some change in it."
There was a conflict in the oral testimony as to whether or not the pipe was actually lowered. Mr. McKay, the city engineer, testified in chief that the raising of the grade of the Fallsway 300 feet north of Eager Street at the request of the railroad company involved the raising of the Fallsway at Eager Street, and that involved the raising of the grade of the bridge west of the Fallsway.
It is perfectly evident, however, from his testimony on cross-examination, that the only reason it was necessary to *Page 95 
change the location of the pipe was to change the condition that had always existed there of having part of the pipe above the floor of the bridge. He admitted that when the new bridge was built, about the same time the city constructed its pipe above the floor, and thus divided the east end of the bridge into two drive ways, and the only answer he could give to the question why the change which he said was necessary on the west end of the bridge was not necessary on the east end, was that Mr. Hendrick, and not the witness, had charge of the work on the east end. The witness, however, was forced to admit that he had approved that work. He also admitted that the city had originally located the pipe above the floor of the west bridge, but said that was done as a matter of economy.
On all the evidence in the case we are satisfied that the trial court erred in refusing to grant the first prayers of the defendant withdrawing the case from the jury.
It may be that good engineering required that the pipe should be entirely under, rather than partly over, the floor of the bridge; but however that may be, we are quite sure the change could not be made at the expense of the defendant, there being no such requirement in the contract, and no necessity for it, resulting from anything that was done at the request, or for the benefit, of the defendant.
Judgment reversed without a new trial, with costs toappellant. *Page 96